UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **JANE DOE 1 and JANE DOE 2,**<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>**ESTATE OF JEFFREY EPSTEIN; SUE ROE; and ROES 2-10,**<br><br>　　　　Defendants. | Case Number:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

　　　Plaintiffs Jane Doe 1 and Jane Doe 2 ("Plaintiffs"), by and through their attorneys, The Bloom Firm, bring this action against the Estate of Jeffrey Epstein, Sue Roe, and Roes 2-10 ("Defendants"). Plaintiffs allege upon knowledge concerning their own experience and upon information and belief as to all other matters.

**I.　　OVERVIEW**

　　　1.　　Jeffrey Epstein ("Epstein") was a serial sexual predator who exploited his wealth and power to fraudulently and forcefully entice young women into engaging in abusive commercial sex acts. Through his recruiter, Sue Roe ("Roe"), Epstein persuaded financially vulnerable, aspiring models to perform what they thought would be massages on him for cash payments. Unbeknownst to Plaintiffs, the massages were mere facades. Epstein employed the term "massage" to fraudulently lure Plaintiffs to his home to sexually touch them against their will and force them to watch him masturbate. These purported "opportunities" to earn money, marketed through Roe, permanently damaged Plaintiffs' lives and careers. Though Epstein is recently deceased, the trauma and pain he caused Plaintiffs remains.

///

1

## II. THE PARTIES

2. Plaintiffs, victims of sex trafficking and molestation, have been identified by pseudonym because this matter is of a highly sensitive and personal nature, and public disclosure of their identities may subject them to further embarrassment, shame, and emotional harm.

3. Plaintiff Jane Doe 1 is a United States citizen and a resident of Japan, domiciled in Okinawa, Japan.

4. Plaintiff Jane Doe 2 is a United States citizen, domiciled in Maryland. She resides in Baltimore, Maryland.

5. On information and belief, Defendant Estate of Jeffrey Epstein acts as the successor-in-interest and/or obligor to Epstein's assets and obligations. On information and belief, the Estate of Jeffrey Epstein includes at least one residence in New York, New York. On information and belief, Epstein used the property as his principle residence.

6. Defendant Sue Roe is an adult female, who worked for Epstein in New York, New York. The true identity and capacity of Defendant Roe is presently unknown to Plaintiffs, and on this basis, Plaintiffs sue Defendant Roe by a fictitious name. Plaintiffs will amend the Complaint to substitute the true name and capacity of Sue Roe when ascertained. Plaintiffs are informed and believe, and thereon allege, that Roe was at all relevant times herein, an employee and/or agent of Epstein.

7. The identities and capacities of defendants ROES 2 through 10 are presently unknown to plaintiffs, and on this basis, Plaintiffs sue these defendants by fictitious names. Plaintiffs will amend the Complaint to substitute the true names and capacities of the ROE defendants when ascertained. Plaintiffs are informed, believe, and thereon allege that ROES 2 through 10 are, and were at all times relevant herein, employees and/or agents of Epstein.

## III. JURISDICTION AND VENUE

8. This Court has jurisdiction over this suit pursuant to 28 U.S.C. § 1331 because this action involves claims brought under 18 U.S.C. §§ 1591 and 1595.

9. On information and belief, this Court has personal jurisdiction over Defendant Estate of Jeffrey Epstein pursuant to New York Civil Practice Law and Rules ("C.P.L.R.") Sections 30l and 302 because Defendant operates in New York, transacts business in New York, and owns, uses, or possesses real property within New York. Similarly, this Court has personal jurisdiction over Defendant Sue Roe because, on information and belief, Roe resides in New York, New York.

10. Venue is proper in this District under 28 U.S.C. § 1391(b) because the events or omissions giving rise to Plaintiffs' claim occurred in this District.

## IV. FACTUAL ALLEGATIONS

11. At all material times, Epstein resided in a seven-story residence at 9 East 71st Street, New York, New York, one of the largest private townhomes on the Upper East Side.

12. At all material times, Jane Doe 1 and Jane Doe 2 were aspiring female models and were also hostesses at The Coffee Shop, located at 29 Union Square West, New York, New York 10003.

13. In or around June 2004, at The Coffee Shop, Roe approached Jane Doe 1 and offered her hundreds of dollars in cash in exchange for providing Epstein a massage in his mansion. Sue Roe told Jane Doe 1 that her "boss" thought Jane Doe 1 was beautiful and that he liked to give young girls "opportunities."

14. A few days later, Roe approached Jane Doe 2 at The Coffee Shop. Roe began the conversation by complimenting Jane Doe 2's physical appearance. Roe told Jane Doe 2 that her nice, wealthy client liked young, pretty girls to massage him. Roe then offered Jane Doe 2 hundreds of dollars to massage Epstein at his mansion. Roe also intimated that there may even be future opportunities to make more money.

15. Shortly thereafter, Roe took Jane Doe 1, Jane Doe 2, and a mutual friend to a club. At this club, Roe told the women that she had worked for Epstein for a long time and that the job for which she was recruited simply entailed a brief massage. Based on these representations, both Jane Doe 1 and Jane Doe 2 accepted the offer.

16.     Jane Doe 1 and Jane Doe 2 were both reasonably excited and hopeful about the opportunity to make money now and in the future. Both women were struggling financially, so Plaintiffs reasonably believed that the opportunity to make money by giving massages would and could provide much-needed financial support.

17.     After being reassured by Roe that the massage would not involve any unwanted touching, Jane Doe 1 arrived at Epstein's mansion in the Upper East Side of Manhattan, per Roe's instructions, and was escorted to a private room.

18.     While in the room, Jane Doe 1 massaged Epstein. During the massage, Epstein became increasingly more aggressive, made sexual advances, and masturbated. Epstein, forcefully and without warning, grabbed Jane Doe 1's breasts and vagina and then masturbated to completion. After Epstein ejaculated, he left the room. Before Jane Doe 1 left Epstein's mansion, she received hundreds of dollars. During this same visit, Roe offered Jane Doe 1 a job to scout other women for money. Jane Doe 1 refused the offer.

19.     Approximately two days after Jane Doe 1's visit, Jane Doe 2 met Roe near a small deli and/or cafe around the corner from Epstein's mansion, per Roe's instructions. Roe reiterated that Epstein would not touch her and that she would not have to undress for the massage. Roe again described Epstein as wealthy and kind. Jane Doe 2 agreed to meet Epstein with the understanding that he would not touch her and would provide her money after she provided him with a massage.

20.     Immediately following this conversation with Roe, Jane Doe 2 arrived at Epstein's Upper East Side mansion for the massage. At the mansion, Epstein utilized increasingly aggressive tactics once he was alone with Jane Doe 2. During the massage, Epstein told Jane Doe 2 to undress, and Jane Doe 2 reluctantly acquiesced. Epstein then asked Jane Doe 2 to strip naked. Fearing what would happen to her if she were to refuse his demands, Jane Doe 2 again acquiesced. Epstein then sexually molested her by forcefully touching Jane Doe 2's breasts and masturbating in front of her. Epstein then forcefully penetrated Jane Doe 2 with his

hand and an object. Epstein then ejaculated. Before she left Epstein's home, Jane Doe 2 received hundreds of dollars.

21. Per his *modus operandi,* Epstein's method of recruiting and enticing Plaintiffs, and his fraudulent conversion of the massage to molestation, intentionally made Plaintiffs feel as if the incidents that took place in his mansion were not crimes. This was a deliberate plan and scheme by Epstein, and carried out by Roe, to ensure that his victims were unaware that they were victims to avoid criminal and civil liability. Until Epstein's July 2019 criminal indictment, Plaintiffs had been unaware that, due to these incidents, they had become victims of a sordid sex-trafficking scheme. As well, Plaintiffs have been uncertain whether it is possible to pursue a private right of action during the pendency of Epstein's criminal actions.

## V. DAMAGES

22. As a direct result of the sexual assault by Epstein, Plaintiffs have suffered, and continue to suffer, from psychological damages, including, but not limited to, depression, anxiety, anger, flashbacks, and nightmares.

23. Plaintiffs also suffered psychological trauma affecting several areas of their lives, including but not limited to their personalities, self-esteem, sexualities, relationships, and careers.

24. Further, for the undetermined future, Plaintiffs must relive their sexual assault everyday due to the inescapable coverage of Epstein's federal criminal sex-trafficking case.

25. Moreover, until recently, Plaintiffs' psychological damages have been debilitating, and have prevented them from understanding and asserting their legal rights. Additionally, Plaintiffs have feared and have been intimidated by Epstein, his wealth, his close connections to Donald Trump, Bill Clinton, Alan Dershowitz and other powerful political, business and legal leaders, and have feared retaliation.

///
///
///

## COUNT I
## Violation of The Trafficking Victims Protection Act 18 U.S.C. §1591
## (All Plaintiffs Against All Defendants)

26. Plaintiffs repeat and re-allege each and every allegation as set forth in the preceding paragraphs as if set forth in full herein.

27. Epstein recruited and enticed Plaintiffs by initiating a professional relationship with them. Through his recruiter, Roe, Epstein invited and recruited Plaintiffs to provide him "massages" for money – the payment of money being of value to the Plaintiffs. A meeting with a wealthy man like Epstein was also of considerable value for aspiring, broke female models.

28. Based upon the representations by Epstein and Roe, these invitations reasonably led Plaintiffs to believe there may be future earning or professional opportunities for Plaintiffs if they accepted Epstein's invitations.

29. Plaintiffs reasonably relied upon the monetary promises and offers made by Epstein. In fact, Plaintiffs only accepted the invitations by Roe because they understood the invitations to be an opportunity for commercial gain.

30. At the outset of initiating his relationship with Plaintiffs, as initiated by Roe, Epstein knew that he would make fraudulent and enticing offers for harmless "massages." He knew that he would engage in fraudulent massage practices and then use force to sexually touch Plaintiffs for his own sexual gratification. He knew that he would make offers of hundreds of dollars to convince Plaintiffs to engage in the massage so that he could convert the massages into molestation.

31. Once he knowingly recruited and enticed Plaintiffs to appear at the massage appointments, Epstein then engaged in commercial sex acts with Plaintiffs by forcibly fondling them, including their genitals, for sexual gratification under the fraudulent guise of massages in exchange for money.

32. Epstein intended that his fraud and force cause sex acts to take place.

33. Roe, as Epstein's recruiter, knowingly and intentionally conspired with Epstein to facilitate the fraud and sexual abuse of Plaintiffs.

34. Plaintiffs initially complied with Epstein's orders during the fraudulent massages because they believed they were part of the "massages." They believed that they had to engage in these practices in get paid. When Epstein then began to touch Plaintiffs in an aggressive, sexual manner, Plaintiffs were terrified and froze. Indeed, through his fraudulent representations, Epstein had isolated each of the Plaintiffs in a small, dark room in an unfamiliar mansion that clearly indicated to Plaintiffs that Epstein was a very wealthy, powerful man. Plaintiffs felt they had no other choice but to comply with this man's orders.

35. Epstein's promises, as relayed by Roe, were made in relation to the payment for massage services, which affects interstate commerce. Epstein's exchange of massage career opportunities for sex acts has a substantial effect on interstate commerce.

36. Epstein's use of his position as a powerful, wealthy man to otherwise engage in touching with young women was for the purpose of his own sexual gratification.

37. On information and belief, the fraudulent "massages" were routinely utilized by Epstein to engage in sex acts with Plaintiffs. In fact, Epstein used this precise fraud to engage in commercial sex acts with multiple young, female victims, as evidenced by his 2008 Florida solicitation of prostitution conviction and recent 2019 criminal indictment for sex trafficking. This was Epstein's *modus operandi*.

38. As a result of Defendant Epstein's heinous and willful conduct, Plaintiffs are entitled to compensatory damages, punitive damages, attorney's fees, costs, and all other appropriate relief.

## **PRAYER FOR RELIEF ON CLAIMS**

WHEREFORE, Plaintiffs pray that this Court:

A. Award Plaintiffs all of their damages under The Trafficking Victims Protection Act 18 U.S.C. § 1595, the civil remedy for violation of The Trafficking Victims Protection Act 18 U.S.C. § 1591, and common law, including compensatory damages and punitive damages in an amount of $100,000,000.00 or in an amount to be determined at trial.

B.    Award Plaintiffs all attorney's fees, costs and expenses available under law;

C.    Award Plaintiffs all pre-judgment interest and post judgment interest available under law; and

D.    Award Plaintiffs such additional and further relief as this Court may deem just and proper.

## VII.  JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable of right by jury.

DATED: August 15, 2019

Respectfully submitted,
**THE BLOOM FIRM**

By: /s/ Arick Fudali
Lisa Bloom
Arick Fudali
Attorneys for Plaintiffs
85 Delancey St., Ste. 20
New York, NY 10002
(818) 914-7397

8